**State v. Wallace**
*[Cite as 8 AOA 80]*

*Case No. 90-CA-02*

*Greene County, (2nd)*
*Decided November 2, 1990*

William F. Schenck, Greene County Prosecutor, Greene County Courthouse, 45 N. Detroit Street, Xenia, OH 45385, for Plaintiff-Appellee.

*James S. Armstrong, 1311 Talbott Tower, Dayton, Ohio 45402-1731, for Defendant-Appellant.*

FAIN, J.

Defendant-appellant Christopher G. Wallace appeals from his conviction and sentence, following a no-contest plea, on a misdemeanor charge of Passing a Bad Check. Wallace contends that the trial court should have granted his motion to dismiss the charges against him upon the ground that he was not brought to trial within the time frame prescribed by R.C. Code 2945.71, and also upon the more general ground that he was deprived of his right to a speedy trial pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, and pursuant to Section 10, Article I of the Ohio Constitution. We conclude that the record fails to portray that the trial court erred when it denied Wallace's motion to dismiss. Accordingly, the judgment of the trial court will be affirmed.

### I

In 1987, Wallace was the subject of a secret indictment charging him with two felony counts of Passing a Bad Check, in violation of R.C. 2913.11(A)(1).

In February, 1988, Wallace was stopped for a traffic violation in Honolulu, Hawaii. At that time, he was advised that there was a warrant for his arrest outstanding in Ohio, but he was not detained. On October 2, 1988, Wallace was arrested in Phoenix, Arizona, and held on the warrant for his arrest issued in Greene County. The authorities in Greene County were made aware of Wallace's apprehension on that date, and sent a request by teletype to the Phoenix Police Department, requesting that Wallace be held pending extradition proceedings.

At some later time, Mark Adkins, of the Greene County Sheriff's office, was advised that Wallace had declined to waive extradition to Ohio. On October 28, 1988, a request for Wallace's extradition was sent to the Governor of Ohio, with supporting documentation. On November 9, 1988, the Governor of Ohio sent a requisition to the Governor of Arizona, requesting Wallace's extradition. On December 14, 1988, Adkins called the Maricopa County, Arizona, authorities, and verified that Wallace was still in custody. On December 22, 1988, the Governor of Arizona issued a warrant for Wallace's extradition, designating Mark Adkins as the officer to whom Wallace was to be delivered.

In early January, 1989, Adkins again contacted the authorities in Maricopa County, Arizona, but this time he was told that Wallace had been released because, pursuant to Arizona law, which was apparently similar to R.C. 2963.13 and 2963.15, there was no authority to hold Wallace for more than 90 days. In an affidavit, Adkins has averred that:

"Greene County authorities were never advised by the Maricopa County [Arizona] authorities that the defendant was ready for release."

On January 24, 1989, Wallace was arrested in Wichita Falls, Texas. That same day, the authorities in Greene County notified the police department in Wichita Falls, by teletype, of their intention to seek Wallace's extradition. The next day, January 25, 1989, Adkins was advised that Wallace had refused to waive extradition. On February 2, 1989, in support of his request to the Governor of Ohio to seek Wallace's extradition, the Greene County Prosecutor certified, among other things, "that there has not been, so far as I am aware, any former application for a requisition for the same person, for the same offense, which is the basis of this application."

On February 16, 1989, the Governor of Ohio issued a Request for Interstate Rendition

to the Governor of Texas. Adkins was advised on February 21, 1989, that a warrant for Wallace's extradition from Texas was imminent. Indeed, on that date the Governor of Texas issued a warrant for Wallace's extradition, designating Mark Adkins as the officer to whom Wallace should be delivered.

On March 24, 1989, Adkins spoke by telephone with Scott Ridell, from the office of the district attorney of Wichita County, in Wichita Falls, Texas. Adkins was advised "that the Defendant's extradition had been ordered by the State Court, but that said order was being appealed by the Defendant in both State and Federal Court." On April 20, 1989, Adkins was notified that Wallace was available for release to his custody. On April 26, 1989, Adkins obtained custody of Wallace in Texas, and returned him to Greene County, where he was incarcerated in the Greene County Jail.

On June 1, 1989, Wallace applied for a writ of habeas corpus, which was ultimately denied. On June 28, 1989, the Chief Justice of Ohio issued an order, which was received and filed in Greene County the next day, ordering that the proceedings against Wallace be stayed until such time as the Chief Justice had ruled upon Wallace's affidavit of bias and prejudice against the trial judge to whom the case had been assigned.

On July 14, 1989, Wallace filed a request that his appointed counsel be dismissed, and substitute counsel be appointed.

On October 25, 1989, the Chief Justice of Ohio found Wallace's affidavit of disqualification not to be well taken, and dismissed it. On November 16, 1989, the trial court filed a judgment entry, the entire text of which is as follows:

"This [sic] Supreme Court of Ohio having dismissed defendant's affidavit of prejudice in its entry filed with the Clerk of Courts on October 30, 1989, the Court then considered the Motion for Withdrawal of Counsel previously filed July 14, 1989 on this 15th day of November, 1989. The court found the motion to be well taken, and permitted the withdrawal of Dain DeVeny as Counsel of Record and advised the Public Defender to appoint new counsel to represent him at trial in this case.

"A new date for jury trial in this matter of November 27, 1989 at 9:00 a.m. was established."

On November 24, 1989, Wallace filed a motion, signed by him personally, and appearing to be in his own handwriting, the entire text of which is as follows:

"Comes now Christopher G. Wallace, Defendant in the foregoing action, and would ask this court for a continuance of his trial date, now set for 27 November 1989.

"Defendant now states that this continuance is necessary in that, as of this date, he has not been contacted by the Greene County Public Defender's Office for appointment of new counsel.

"Further Defendant would state that he has not had adequate opportunity or assistance to prepare or present his defense, as his own counsel and would ask this court to have scheduled a hearing so that a full and complete statement of facts may presented [sic] and recorded for record. Why [sic] the tolling of this time should not be held against Defendant, taking exception to the courts ruling of 15 November 1989."

Three days later, on November 27, 1989, the trial court granted Wallace's motion in an entry, signed by Wallace, the new attorney representing him, and the prosecutor assigned to the case, the entire text of which is as follows:

"Upon motion of the defendant and for good cause shown, the Trial of this matter is hereby continued until January 8, 1990.

"Provisions of the speedy trial statute are tolled from the date of this entry to January 8, 1990."

On December 12, 1989, Wallace filed a motion to dismiss the charges against him, based upon R.C. 2945.71 and the speedy trial provisions of both the federal and Ohio constitutions. Although there is no journal entry disposing of this motion, there is in the record a transcript of proceedings on January 3, 1990, in which the trial court announced its decision, orally, denying Wallace's motion to dismiss. During this proceeding, on January 3, 1990, Wallace pled no contest to one misdemeanor charge of Passing a Bad Check, pursuant to a plea bargain. Wallace was found guilty, was sentenced to six months imprisonment, was given credit for time served in excess of that amount, and was released forthwith with no fine imposed.

From his conviction and sentence, Wallace appeals.

## II

A threshold problem arises as a result of the fact that Wallace has served all of the time

to be served for this offense, is not subject to a fine or any other penalty besides incarceration, and is not subject to a collateral disability. Ordinarily, when a criminal defendant has served his time, is not subject to any fine, and is not subject to any collateral or residual disability, any appeal from his conviction and sentence must be dismissed as moot. *Ohio v. Wilson* (1975), 41 Ohio St. 2d 236, syllabus. However, *Sibron v. New York* (1968), 392 U.S. 40, 88 S. Ct. 1889, 1897, teaches that, "a state may not effectively deny a convict access to its appellate courts until he has been released and then argue that his case has been mooted by his failure to do what it alone prevented him from doing."

In the case before us, Wallace's appeal was moot before it could even be filed. We understand *Sibron v. New York* supra, to stand for the proposition that a criminal defendant may not be deprived of any opportunity to appeal his conviction. Accordingly, we conclude that we have jurisdiction to determine this appeal.

## III

Wallace's sole Assignment of Error is as follows:

"THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS, AS APPELLANT WAS NOT BROUGHT TO TRIAL WITHIN THE TIME REQUIRED BY OHIO REVISED CODE SECTIONS 2945.71 TO 2945.73, INCLUSIVE; AND APPELLANT'S RIGHT TO A SPEEDY TRIAL UNDER THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO WAS VIOLATED."

Although they are not essential to his argument, Wallace relies upon his periods of incarceration in Arizona and in Texas in support of his argument that his right to a speedy trial was violated. As the State points out, the time within which a defendant may be brought to trial is extended by R.C. 2945.72(A) "by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure *** [the accused's] availability."

Wallace contends that the prosecution did not use "reasonable diligence" in seeking his extradition. In making this argument, Wallace relies upon the fact that the Arizona extradition proceedings ultimately failed of their purpose, Wallace having been released from custody in Arizona after having been incarcerated for 90 days without being extradited. Wallace also relies upon the Prosecutor's certification, in connection with the Texas extradition proceedings, that there had been no previous attempt to extradite him.

The record supports the trial court's conclusion that the Prosecutor used reasonable diligence in seeking Wallace's extradition in Arizona. As the course of proceedings in connection with the Texas extradition illustrates, the mere fact that the governor of a state has issued an extradition warrant does not justify expending the time and public funds to go pick up the accused. The extradition warrant may be the subject of judicial challenge, as we know it was in Texas, and any judicial challenges must first be resolved before obtaining custody of the accused pursuant to the governor's warrant of extradition. Therefore, in view of Mark Adkins' unrebutted averments in his affidavit concerning the efforts to secure Wallace's extradition from Arizona, we are satisfied that the trial court could conclude, as it did, that the Prosecutor used reasonable diligence in pursuing Wallace's extradition from Arizona.

We are troubled by the Prosecutor's certification, in connection with the Texas extradition proceedings, which began less than a month after the Arizona proceedings had failed, that there had been no previous efforts to extradite Wallace. Wallace hypothesizes in his brief that the Prosecutor was using a form certification. If this hypothesis is correct, we would encourage the Greene County Prosecutor to use greater care when certifying relevant facts while seeking a request for extradition from the Governor of Ohio. However, we do not conclude that this inaccuracy in the Prosecutor's certification constituted the lack of reasonable diligence to which R.C. 2945.72(A) refers. The concern therein addressed is the speed with which extradition proceeds, so that the subject of the extradition proceedings is not allowed to languish in jail for an inordinate time. In our view, the error in the Prosecutor's certificate had nothing to do with the speed of the Texas extradition proceedings. Therefore, neither those proceedings nor the proceedings in Arizona should count for purposes of applying the speedy trial requirements in R.C. 2945.71. Wallace does not contend, and we do not find, that the Prosecutor was otherwise less than diligent in obtaining Wallace's extradition from Texas.

84

Wallace arrived in Greene County, after having been extradited from Texas, on April 26, 1989. Both Wallace and the State agree that the next 35 days, until June 1, 1989, should count for speedy trial purposes.

On June 1, 1989, Wallace filed an application for a writ of habeas corpus, which was ultimately denied. The State contends that Wallace's speedy trial time was tolled from the date that he filed his application for a writ of habeas corpus. Wallace contends otherwise. We find it unnecessary to determine how this time should be treated. On June 29, 1989, an order from the Chief Justice of Ohio was received and filed, staying any further proceedings in Wallace's case until such time as the Chief Justice had ruled upon Wallace's affidavit of bias and prejudice against the trial judge. If Wallace's application for a writ of habeas corpus did not toll his speedy trial time, a total of 63 days elapsed between his arrival at the Greene County Jail and the Chief Justice's order staying proceedings.

R.C. 2945.72 provides for the tolling of a defendant's speedy trial time for "[a]ny period during which trial is stayed *** pursuant to an order of another court competent to issue such order." Wallace contends that his speedy trial time should not have been tolled when the Chief Justice's order staying his trial was received and filed because he had grounds for his affidavit of bias and prejudice, which was the cause of the delay. Wallace's argument is untenable in view of the fact that the Chief Justice ultimately overruled his affidavit of bias and prejudice, holding that the trial judge was competent to hear the case. Accordingly, Wallace's speedy trial time, which began to run on April 26, 1989, was tolled on June 29, 1989, if not earlier. By that time, 63 days had elapsed.

The Chief Justice's ruling was made on October 25, 1989. Ordinarily, that would have resumed the running of Wallace's speedy trial time. However, Wallace's appointed counsel, Dain DeVeny, apparently with Wallace's knowledge and approval, had applied to the trial court on July 14, 1989, to be withdrawn as Wallace's counsel of record. We agree with the State that the pendency of this application tolled Wallace's speedy trial time pursuant to R.C. 2945.72(C).

On November 16, 1989, three weeks after the Chief Justice's ruling permitting the trial proceedings to resume, the trial court entered an order granting Deveny's application to be withdrawn as counsel of record, and directing the public defender to appoint another attorney to represent Wallace. The State agrees that Wallace's speedy trial time resumed running from November 16, 1989, the date of this entry.

On November 27, 1989, the trial court granted Wallace's own motion to continue his trial date, and ordered his speedy trial time tolled until the new trial date. This was 11 days after Wallace's speedy trial time resumed running on November 16, 1989.

Wallace contends that even though the November 27, 1989 continuance was a "continuance granted on the accused's own motion," which would ordinarily toll the speedy trial time pursuant to R.C. 2945.72(H), his speedy trial time should not have been tolled from that date, under the particular circumstances of this case. Wallace contends that he was forced to ask for a continuance of the trial date because of the fact that the trial court had failed to appoint substitute counsel for him, after having permitted DeVeny's withdrawal.

R.C. 2945.72(H) simply provides that:

"The time within which an accused must be brought to trial, ***, may be extended only by the following:

"***

"(H)The period of any continuance granted on the accused's own motion, ***."

The statute does not provide for an exception where the accused's own motion has been necessitated by a lack of diligence on the part of the trial court. Conceivably, a lack of diligence on the part of the trial court in appointing counsel for a defendant, if sufficiently egregious, might justify an exception to the tolling provided for in R.C. 2945.72(H), but we do not find any egregious lack of diligence in this case. The trial court ordered that the public defender's office appoint new counsel for Wallace on November 16, 1989, and the continuance was granted just 11 days later, on November 27, 1989. Under these circumstances, we conclude that Wallace's speedy trial time was tolled on November 27, 1989. It did not recommence at any time before Wallace pled no contest, was convicted, and sentenced, on January 3, 1990.

Thus, as we view the sequence of events, there were at most two periods of time during which Wallace's speedy trial time ran pursuant to R.C. 2945.71. One was 63 days from April

26, 1989, until June 29, 1989; the other was 11 days from November 16, 1989, until November 27, 1989. These two periods total 74 days. All of these days are required to be trebled, pursuant to R.C. 2945.71(E), since Wallace was incarcerated. Seventy-four days trebled is 222 days, which is less than the 270 days provided for in R.C. 2945.71(C). Therefore, we conclude that Wallace's motion to dismiss on speedy trial grounds was properly denied.

Wallace also contends that he was deprived of his general right to a speedy trial pursuant to both the federal and the Ohio constitutions. Wallace does not contend, and the record does not portray, that his defense was prejudiced in any way by the delay in bringing him to trial. Whether the periods of delay are viewed separately, or whether they are taken as a whole, we are satisfied that they are not unreasonable, and did not unreasonably interfere with Wallace's rights to a speedy trial under both the federal and Ohio constitutions.

Wallace's sole Assignment of Error is overruled.

### IV

Wallace's sole Assignment of Error having been overruled, the judgment of the trial court will be affirmed.

WOLFF, P.J., and WILSON, J., concur.